UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 AUDAY MAKI, R.Ph.,

Defendant.

_____/

Case:2:20-cr-20144
Judge: Parker, Linda V.
MJ: Patti, Anthony P.
Filed: 03-10-2020 At 01:36 PM
SEALED MATTER (DP)

VIO.:       18 U.S.C. § 1347
            18 U.S.C. § 2
            18 U.S.C. § 981
            18 U.S.C. § 982

## INDICTMENT

**THE GRAND JURY CHARGES**:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare and Medicaid Programs

1.      The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare covered different types of benefits and was separated into different program "parts."  Medicare Part D subsidized the cost of prescription drugs

for Medicare beneficiaries in the United States. Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

3. In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans. Medicare drug plans were operated by private health care insurance companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

4. Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

5. Qlarant is the Medicare Part D program integrity contractor for CMS under the National Benefit Integrity Medicare Drug Integrity Contract. Qlarant's

role is to detect, prevent, and investigate allegations of fraud, waste, and abuse in Part D on a national level.

6.       The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care.  CMS was responsible for overseeing the Medicaid program in participating states, including Michigan. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

7.       Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries.  Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

8.       Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

9.       Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

3

### The Private Health Insurance Program

10.     Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan. BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

11.     BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

12.     BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Pharmacy Benefit Managers

13.     Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

14.     After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically,

4

through direct deposits into accounts held, and previously identified, by the pharmacy.

15.    CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors) and Medicaid health plans. Express Scripts managed prescription drug benefits for BCBS. CVS Caremark processed and adjudicated claims in Arizona. OptumRx and Express Scripts processed and adjudicated claims outside the state of Michigan.

### The Pharmacy

16.    City Drugs Pharmacy, Inc. ("City Drugs") was a pharmacy and Michigan corporation located at 11190 Gratiot Ave., Detroit, MI 48213.

### The Defendant

17.    Defendant AUDAY MAKI, a resident of Wayne County, Michigan, was a licensed pharmacist in Michigan who owned and was the pharmacist-in-charge of City Drugs.

### Overview of the Scheme

18.    The Defendant and others engaged in a scheme and artifice to defraud Medicare, Medicaid, and BCBS by submitting and causing the submission of false and fraudulent claims to Medicare, Medicaid, and BCBS drug plan sponsors through City Drugs. The false and fraudulent claims consisted of prescriptions that were

submitted as claims to Medicare, Medicaid, and BCBS drug plan sponsors through City Drugs as if they were dispensed to beneficiaries but in fact were never dispensed to those beneficiaries.

19.    Over the course of the scheme, which began in or about 2010 and continued through approximately 2018, MAKI submitted or caused to be submitted approximately $3.7 million in false and fraudulent claims. MAKI personally profited from his participation in the scheme by receiving fraud proceeds for the personal use and benefit of himself and others.

### Object and Purpose of the Scheme

20.    The object and purpose of the scheme was for AUDAY MAKI and others, known and unknown to the Grand Jury, to unlawfully enrich themselves and others by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors through City Drugs; (b) concealing and causing the concealment of the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

## Description of the Scheme

21.     AUDAY MAKI and others maintained a national provider identifier for City Drugs in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

22.     AUDAY MAKI and others known and unknown to the Grand Jury, on behalf of City Drugs, entered into pharmacy provider agreements with CVS Caremark and Express Scripts, among other PBMs.

23.     AUDAY MAKI and others, known and unknown to the Grand Jury, submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS via interstate wires and on behalf of City Drugs for prescription drugs that were not dispensed, at times because the beneficiaries were deceased, and often medically unnecessary.

24.     False and fraudulent claims that AUDAY MAKI and others electronically submitted, and caused to be electronically submitted, to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were processed and adjudicated electronically by CVS Caremark, OptumRx, and Express Scripts, among other PBMs, outside the state of Michigan.  False and fraudulent claims that AUDAY MAKI and others electronically submitted and caused to be electronically

submitted to BCBS were processed and adjudicated electronically by Express Scripts outside the state of Michigan.

25.     Qlarant, a Medicare Drug Integrity Contractor, conducted an invoice review for City Drugs.  Qlarant compared City Drugs' purchases of certain medications to its Medicare and Medicaid claims data for those same medications during the approximate time period of January 2011 to February 2018.  Qlarant concluded that City Drugs' inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid.  Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid City Drugs approximately $3,695,554.43 for medications that City Drugs did not have sufficient inventory to dispense.

26.     AUDAY MAKI and others caused an approximate loss of approximately $3.7 million to Medicare and Medicaid because of the false and fraudulent claims that AUDAY MAKI and others submitted and caused to be submitted.

27.     During the approximate time period of January 2011 to February 2018, AUDAY MAKI and others caused an approximate loss of at least $42,872.61 to BCBS because of the false and fraudulent claims that AUDAY MAKI, and others submitted and caused to be submitted.

28.     AUDAY MAKI and others caused the transfer and disbursement of illicit proceeds derived from the fraudulent scheme to themselves and others.

## COUNTS 1-3
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

29.     Paragraphs 1 through 28 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

30.     From approximately 2010 through 2018, in Wayne County, in the Eastern District of Michigan, and elsewhere, AUDAY MAKI and others, known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

31.     Paragraph 20 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

9

## The Scheme and Artifice

32.     Paragraphs 21 through 28 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of the Scheme and Artifice

33.     On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, AUDAY MAKI did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in that AUDAY MAKI submitted and caused the submission of false and fraudulent claims for payment and falsely represented that City Drugs provided prescription medications to Medicare and Medicaid beneficiaries, including the Medicaid beneficiaries below, as described in Paragraphs 21 to 28 of this Indictment, with each execution set forth below forming a separate count:

| Count | Defendant | Pharmacy | Benef. | Approx. Date of Alleged Bill | Description of Prescription Medication | Approx. Paid Amount |
|-------|-----------|----------|--------|------------------------------|----------------------------------------|---------------------|
| 1 | AUDAY MAKI | City Drugs | K.M. | 6/2/2015 | Prezista | $1,305.72 |

| Count | Defendant | Pharmacy | Bene. | Approx. Date of Alleged Crime | Description of Fraudulent Action | Approx. Paid Amount |
|---|---|---|---|---|---|---|
| 2 | AUDAY MAKI | City Drugs | G.H. | 1/27/2016 | Metoprolol Succinate Oral | $28.22 |
| 3 | AUDAY MAKI | City Drugs | P.M. | 3/19/2018 | Acyclovir | $14.82 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE

34.    The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which AUDAY MAKI has an interest, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461.

35.    Upon conviction of violations alleged in this Indictment, AUDAY MAKI shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, pursuant to 18 U.S.C. § 981(a)(1)(C), together with Title 28 U.S.C. § 2461, and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

36.    *Money Judgment*: The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the value of the property subject to forfeiture.

37.    *Substitute Assets*:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.)    cannot be located upon the exercise of due diligence;

    b.)    has been transferred or sold to, or deposited with, a third party;

    c.)    has been placed beyond the jurisdiction of the Court;

    d.)    has been substantially diminished in value; or

    e.)    has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendant, up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY


*s/Regina McCullough*
REGINA MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan


*s/Malisa Dubal*
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice


*s/Howard Locker*
HOWARD LOCKER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice


*s/Claire Sobczak*
CLAIRE SOBCZAK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

Dated: March 10, 2020



 National Benefit Integrity Medicare Drug Integrity Contractor (NBI MEDIC)

April 30, 2018

**MEDIC 4908 City Drugs Pharmacy Inc. Invoice Review Summary**

**City Drugs Pharmacy Inc.**
11190 Gratiot Avenue
Detroit, MI 48213
NCPDP: 2371881
NPI: 1386898070

---

*Review (1) Purchases compared to PDE Records Only*

**Wholesalers with Supportive Invoices:** Anda, Cardinal Health-Harvard Drug Group, Cardinal Health-ParMed and McKesson

**Date Range of Invoice Review:** 1/1/2011 – 2/5/2018

**Number of Drugs Reviewed:** 55

**Total number of drugs short by IDR:** 21

**Approximate Dollar Loss according to PDE Records:** $443,344.53

**Top 10 drug shortages by unit quantity:**

| Drug Name | Shortage (in units) |
|---|---|
| ADVAIR DISKU AER 250/50 | 38,690.00 |
| NEXIUM    CAP 40MG | 12,266.00 |
| ADVAIR DISKU AER 500/50 | 3,840.00 |
| LIDODERM    DIS 5% | 3,540.00 |
| MEGESTROL SUS 625MG/5M | 3,000.00 |
| SPIRIVA   CAP HANDIHLR | 1,855.00 |
| SEROQUEL    TAB 50MG | 1,480.00 |
| ZYPREXA    TAB 15MG | 914.00 |
| ZYPREXA    TAB 5MG | 840.00 |
| TRUVADA    TAB 200-300 | 750.00 |

**Top 10 drug shortages by dollar loss:**

| Drug Name | Approx Dollar Loss |
|---|---|
| ADVAIR DISKU AER 250/50 | $158,252.60 |
| NEXIUM    CAP 40MG | $80,471.19 |
| TRUVADA    TAB 200-300 | $31,490.47 |
| LIDODERM    DIS 5% | $26,543.89 |
| ZYPREXA    TAB 15MG | $24,294.45 |
| ADVAIR DISKU AER 500/50 | $20,375.72 |
| PREZISTA    TAB 800MG | $19,025.36 |
| SPIRIVA   CAP HANDIHLR | $18,852.51 |
| MEGESTROL SUS 625MG/5M | $11,793.52 |
| ZYPREXA    TAB 5MG | $9,809.54 |





 National Benefit Integrity Medicare Drug Integrity Contractor (NBI MEDIC)

*Review (2) Approximate Dollar Loss to Medicare Part D and Medicaid*

**Wholesalers with Supportive Invoices:** Anda, Cardinal Health-Harvard Drug Group, Cardinal Health-ParMed and McKesson

**Date Range of Invoice Review:** 1/1/2011 – 2/5/2018

**Number of Drugs Reviewed:** 55

**Total number of drugs short to Medicare:** 53

**Total number of drugs short to Medicaid:** 35

**Approximate Dollar Loss according to Medicare:** $2,097,515.71

**Approximate Dollar Loss according to Medicaid\*:** $1,598,038.72

**Approximate Dollar Loss according to Medicare and Medicaid\* Combined:** $3,695,554.43

> *\*The price per unit under Medicaid may differ from that of the price per unit under Medicare Part D. However this review utilizes the price per unit calculated for the drugs of interest by the Medicare Part D program to calculate an approximate dollar loss to Medicaid.*

**Top 10 drug shortages by approximate dollar loss to Medicare and Medicaid Combined:**

| Drug Name | Approx Dollar Loss |
|---|---|
| AUG BETAMET OIN 0.05% | $470,539.14 |
| QVAR       AER 80MCG | $404,986.69 |
| ADVAIR DISKU AER 250/50 | $312,128.60 |
| QVAR       AER 40MCG | $242,648.93 |
| LYRICA     CAP 75MG | $234,808.72 |
| SPIRIVA  CAP HANDIHLR | $212,459.12 |
| ABILIFY    TAB 5MG | $174,927.31 |
| LANTUS     INJ 100/ML | $152,177.48 |
| SYMBICORT  AER 160-4.5 | $150,730.51 |
| TRIUMEQ    TAB | $135,948.68 |

 28464 Marlboro Avenue • Easton, Maryland 21601-2732
877-7SAFERX • Fax 410-819-8698

2

**Select City Drugs Pharmacy Claims for Kenneth McWilliams**

| Beneficiary | Prescription | Date of Service | Amount Paid |
|---|---|---|---|
| **Epzicom (Not Analyzed by Qlarant) and Prezista (Shortage Medication)** | | | |
| McWilliams, Kenneth | Epzicom Tablet | 7/16/2014 | $1,145.82 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 7/16/2014 | $1,210.10 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 8/14/2014 | $1,210.10 |
| McWilliams, Kenneth | Epzicom Tablet | 8/14/2014 | $1,145.82 |
| McWilliams, Kenneth | Epzicom Tablet | 9/9/2014 | $1,145.82 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 9/9/2014 | $1,210.10 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 10/6/2014 | $1,210.10 |
| McWilliams, Kenneth | Epzicom Tablet | 10/6/2014 | $1,145.82 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 11/3/2014 | $1,210.10 |
| McWilliams, Kenneth | Epzicom Tablet | 11/3/2014 | $1,145.82 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 12/2/2014 | $1,210.10 |
| McWilliams, Kenneth | Epzicom Tablet | 12/2/2014 | $1,145.82 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 12/27/2014 | $1,210.10 |
| McWilliams, Kenneth | Epzicom Tablet | 12/27/2014 | $1,145.82 |
| McWilliams, Kenneth | Epzicom Tablet | 1/20/2015 | $1,145.82 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 1/20/2015 | $1,305.72 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 2/18/2015 | $1,305.72 |
| McWilliams, Kenneth | Epzicom Tablet | 2/18/2015 | $1,224.89 |
| McWilliams, Kenneth | Epzicom Tablet | 3/14/2015 | $1,224.89 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 3/14/2015 | $1,305.72 |
| McWilliams, Kenneth | Epzicom Tablet | 4/11/2015 | $1,224.89 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 4/11/2015 | $1,305.72 |
| McWilliams, Kenneth | Prezista 800 mg Tablet | 5/7/2015 | $1,305.72 |
| McWilliams, Kenneth | Epzicom Tablet | 5/7/2015 | $1,224.89 |
| **McWilliams, Kenneth** | **Prezista 800 mg Tablet** | **6/2/2015** | **$1,305.72** |
| McWilliams, Kenneth | Epzicom Tablet | 6/2/2015 | $1,224.89 |
| **TOTALS** | **26 Epzicom or Prezista Prescriptions** | | **$31,596.03** |
| **Betamethasone (Qlarant Shortage Medication)** | | | |
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 5/10/2017 | $96.68 |
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 6/8/2017 | $96.68 |

| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 7/11/2017 | $96.68 |
|---|---|---|---|
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 8/8/2017 | $96.68 |
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 9/7/2017 | $96.68 |
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 10/7/2017 | $96.68 |
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 11/7/2017 | $96.68 |
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 12/12/2017 | $96.68 |
| McWilliams, Kenneth | Betamethasone DP Aug 0.05% Oin | 1/11/2018 | $96.58 |
| **TOTALS** | **9 Betamethasone Prescriptions** | | **$870.02** |
| **Fluocinonide (Not Analyzed by Qlarant)** | | | |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 9/29/2015 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 1/19/2016 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 2/9/2016 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 3/8/2016 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 4/5/2016 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 4/26/2016 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 5/17/2016 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 6/21/2016 | $104.20 |
| McWilliams, Kenneth | Fluocinonide 0.05% Cream | 7/19/2016 | $104.20 |
| **TOTALS** | **9 Fluocinonide Prescriptions** | | **$937.80** |
| **Controlled Substances Prescribed by Dr. Zongli Chang (Not Analyzed by Qlarant)** | | | |
| McWilliams, Kenneth | Alprazolam 2 mg Tablet | 9/29/2015 | $4.25 |
| McWilliams, Kenneth | Hydrocodon-Acetaminoph 7.5-325 | 9/29/2015 | $16.64 |
| McWilliams, Kenneth | Promethazine-Codeine Syrup | 9/29/2015 | $11.01 |
| **TOTALS** | **3 Prescriptions** | | **$31.90** |

### Select City Drugs Pharmacy Claims for Patricia Mayers

| Beneficiary | Prescription | Date of Service | Amount Paid |
|---|---|---|---|
| **Acyclovir (Not Analyzed by Qlarant)** | | | |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 5/12/2016 | $11.74 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 6/16/2016 | $11.26 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 7/18/2016 | $11.25 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 8/15/2016 | $11.25 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 9/13/2016 | $11.25 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 10/10/2016 | $10.23 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 11/8/2016 | $10.15 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 12/7/2016 | $10.15 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 1/5/2017 | $10.15 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 2/2/2017 | $10.15 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 3/1/2017 | $10.18 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 3/27/2017 | $10.18 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 4/27/2017 | $10.18 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 7/26/2017 | $12.76 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 8/23/2017 | $12.76 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 9/25/2017 | $12.76 |
| **Mayers, Patricia** | **Acyclovir 400 mg Tablet** | **3/19/2018** | **$14.82** |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 4/26/2018 | $7.90 |
| Mayers, Patricia | Acyclovir 400 mg Tablet | 5/25/2018 | $7.90 |
| **TOTALS** | **19 Acyclovir Prescriptions** | | **$207.02** |



## Selection of City Drugs Claims for Guilliume Harris
## with Dates of Service After Harris' Date of Death

| Benef. | Insurer/ Date of Death | Approx. Date of Service | Description of Prescription Medication | Approx. Paid Amount |
|--------|------------------------|-------------------------|----------------------------------------|---------------------|
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Glipizide Er 10 mg Tablet | $9.18 |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Metformin Hcl 850 mg Tablet | $3.21 |
| **G.H.** | **Medicaid 12/15/2015** | **1/27/2016** | **Metoprolol Succ Er 200 mg Tab** | **$28.22** |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Hydralazine 25 mg Tablet | $5.71 |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Spironolactone 50 mg Tablet | $6.80 |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Simvastatin 40 mg Tablet | $1.90 |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Aspirin Ec 81 mg Tablet | $1.25 |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Levetiracetam 500 mg Tablet | $12.01 |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Amlodipine Besylate 10 mg Tab | $1.57 |
| G.H. | Medicaid 12/15/2015 | 1/27/2016 | Lisinopril-Hctz 20-12.5 mg Tab | $1.96 |

ORIGINAL

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes    ☒ No | **AUSA's Initials:** |

**Case Title:** USA v.  Auday Maki

**County where offense occurred :**  Wayne County

**Check One:**    ☒ **Felony**          ☐ **Misdemeanor**          ☐ **Petty**

✓ Indictment/_____ Information --- no prior complaint.

_____ Indictment/_____ Information --- based upon prior complaint [**Case number:**           ]

_____ Indictment/_____ Information --- based upon LCrR 57.10 (d) [*Complete Superseding section below*].

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

March 10, 2020
Date

Howard Locker
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 202-878-9409
Fax:    313-226-2621
E-Mail address: Howard.Locker@usdoj.gov
Attorney Bar #:  NY- 5035514, CT- 433489

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.